BOJARSKI *v*. MILUS.

1. VENDOR AND PURCHASER—RESCISSION—EQUITY.

In a suit to enjoin summary proceedings, for the rescission and cancellation of a land contract, and for an accounting, where it appears that defendant has sold the property received by him from plaintiffs, and that it is impossible to place the parties *in statu quo*, and that defendant offered in the court below to do equity by perfecting the title of the farm sold to plaintiffs, about which the controversy arose, and also offers to pay all costs of this suit and relieve plaintiffs from payment of interest on defaulted payments, said offer is substituted, on appeal, for the decree of the court below rescinding the contract.

2. APPEAL AND ERROR — EQUITY — APPEALS HEARD DE NOVO ON RECORD MADE.

Chancery cases are heard in the Supreme Court *de novo* on the record as made.

Appeal from Washtenaw; Sample (George W.), J. Submitted October 9, 1923. (Docket No. 61.) Decided April 10, 1924. Rehearing denied June 2, 1924.

Bill by Joseph Bojarski and another against William Milus to enjoin summary proceedings, for the rescission and cancellation of a land contract, and for an accounting. From a decree for plaintiffs, defendant appeals. Modified and affirmed, conditionally.

*Cavanaugh & Burke* (*Henry C. Bogle*, of counsel), for plaintiffs.

*Jacob F. Fahrner* and *Arthur Brown*, for defendant.

STEERE, J. Defendant, William Milus, owned a farm located near Whitmore lake in Washtenaw

county, Michigan, containing 110 acres more or less, which in 1921 he listed for sale with a real estate agent in Detroit named De Grandchamp.    The agent found plaintiffs as prospective purchasers, took them to see the property and meet defendant, resulting in an agreement for sale of said farm to plaintiffs on a basis price of $17,000, to be paid by their conveying to defendant a house and lot located at River Rouge near Detroit at a valuation of $8,000 and transferring to him an automobile appraised at $1,000, making the so-called down payment a total of $9,000, the balance of $8,000 to be paid at the rate of $100 per month for the first three months and thereafter $300 every three months with interest at the rate of 6 per cent.

The necessary papers were thereupon executed including a land contract dated July 21, 1921, from defendant to plaintiffs for his Whitmore lake farm, drawn on what is known as a Union Trust Company form providing for his furnishing plaintiffs "a Union Trust Company abstract, guaranty or certificate of title," and should execute and deliver to them a good and sufficient warranty deed of the premises "free and clear of and from all incumbrances," etc., upon their completing the deferred payments provided for. On the same date and occasion the parties signed an agreement on a partially filled out form in which the following appears:

"The said party of· the first part covenants and agrees to and with the parties of the second part who are making an exchange of a farm in Washtenaw county for house and lot on the northeast corner of Henry and Richter streets, River Rouge, Mich., by which each party are to furnish abstracts to each other free and clear of all incumbrances excepting an $8,000.00 balance on farm.    *    *    *    (Unfilled blanks.)

"And for the true and faithful performance of all and every of the covenants and agreements above mentioned the parties to these presents bind them-

selves, unto each other, in the penal sum of two thousand ($2,000.00) dollars, as fixed and settled damages to be paid by the failing party."

It is not questioned but that each party furnished an abstract to the other, but at just what time is not clearly shown.

It appears that a Mr. Jacobs who was defendant's grantor of the Whitmore lake farm and held a clear title to it had visions that it possessed subterranean wealth, and in the warranty deed he gave defendant expressly excepted and reserved to himself and wife all mineral and oil rights therein, of which defendant made no mention to the plaintiffs during their negotiations but sought to except from his contract for sale of the land by a reserving clause similar to that in his deed from Jacobs. Plaintiffs at first signed the contract with the reservation inserted, being deceived as they claim by the contract having been read to them with the reservation omitted. They discovered the reservation shortly after the papers were executed, and immediately made complaint, refusing to go on with the deal unless it was corrected. The contracting parties then met at the office of defendant's agent and that clause was stricken out of the contract by agreement of all concerned. Upon the hearing in the lower court much testimony was devoted to that subject with emphatic contradictory allegations and denials. The trial court found the facts to be as plaintiffs claimed, and so adjudicated. Counsel for defendant in their brief in this court emphasize upon the facts so found by the court that it stands undisputed plaintiffs knew when they accepted the contract that there was an outstanding mineral and oil reservation held by one Jacobs, and it was beyond defendant's power to give a clear title except by securing from Jacobs a conveyance of the rights he had reserved. It also stands undisputed that when defendant gave

them the contract he bound himself to do that very thing to the same extent they obligated themselves to pay the balance for the place, and subsequent events show that when he found it advisable to do so he was able to secure such a conveyance from Jacobs.

After the contract was entered into, on July 21, 1921, plaintiffs transferred and surrendered to defendant their River Rouge real estate and automobile as agreed, took possession of the Whitmore lake farm and some personal property which went with it, thereafter occupying and using the same as their own. They made their payments under the contract and, with defendant's written consent, negotiated a sale of their interest in the farm to a couple of men named Bartz, and their wives, by an agreement dated January 10, 1922. When the Bartzes discovered the outstanding Jacobs reservation they declined to go on with the deal until that cloud was removed. They visited defendant with Bojarski and tried to induce him to clear up the title, without success. He then denied any liability in that connection and insisted, as he did at the hearing of this case, that his contract to sell the land contained the same mineral and oil reservation as his deed from Jacobs, denied that it had ever been stricken out with his knowledge or consent and contended that if it had been stricken out in plaintiff's copy he knew nothing of it. He admitted, however, that he went with Bojarski to see Jacobs about it, to whom Bojarski made some kind of an offer which was refused. The Bartzes had then taken possession of the farm, but finding defendant refused to clear up his title rescinded their tentative contract and returned possession to plaintiffs, who in the meantime were urging defendant to adjust the matter, and offered to pay the January payment before it was due if he would do so.

On February 23, 1922, defendant served notice of forfeiture on plaintiffs for default in payment and

commenced summary proceedings before a circuit court commissioner to oust them.    On March 13, 1922, plaintiffs filed their bill asking for an injunction, rescission and cancellation of their contract with defendant, and an accounting.    The trial court after hearing the case upon proofs taken in open court filed an opinion, and granted a decree on January 17, 1923, setting aside the contract between the parties of July 21, 1921, ordering plaintiffs to vacate the farm within 40 days, requiring defendant to repay them the $9,000 they had paid him upon it and making the same a lien upon the land, but providing that if within 30 days after date of the decree he should tender a good and sufficient warranty deed to the River Rouge property to plaintiffs, and pay them $1,000 to cover the automobile he had received, the lien should be discharged; also making provision under certain contingencies for sale of some live stock and other personal property on the place, as in case of perishable property, the proceeds to be deposited with the clerk of the court; and for an accounting between the parties before a circuit court commissioner relative to interest, rents, profits, etc., received by or due to the respective parties in connection with the several properties involved.

On February 24, 1923, defendant moved the court to set aside the decree and grant a rehearing, setting up that he had sold the River Rouge property before this controversy arose, and various other stated reasons why the parties could not be placed *in statu quo*, nor a fair accounting be had between them, stating and offering in support of the motion, in view of the court's findings and to end the litigation in part as follows:

"At the expense of $1,000.00 (he) has arranged for the procurement of a quitclaim deed to said mineral and oil reservation to said property, and now offered same to the plaintiffs gratuitously and without any

cost whatever to them; that upon plaintiffs paying
$1,000.00 of the approximate sum of $1,400.00 due
this defendant on the contract rescinded by this court,
the quitclaim deed will be delivered to them and this
defendant will give credit for said $1,000.00 upon their
contract as payment to said defendant, even though
said $1,000.00 will be a total loss to this defendant,
as same will be received by Ben Jacobs and his wife,
who own the oil and mineral reservation.

"The defendant further offers to pay all the costs
of this suit, and will not charge plaintiffs interest for
the defaulted payments during the time that this con-
tract was in litigation."

This motion was denied and defendant has appealed.

A careful study of this record is convincing that in
the relative positions these parties have put them-
selves, it would be difficult to do exact justice to both
and work out an equitable disposition of their con-
troversy along the rather complicated lines the court
adopted, with its inevitable expenses, delays and un-
certainties.    It is impossible to put the parties *in
statu quo*.    Plaintiffs are yet in possession of the
farm, stock and other personal property they took with
it, unless they have later disposed of the latter.    They
did not tender restitution to defendant before filing
their bill for rescission, an accounting and injunction
to stay his summary proceedings.    On the other hand
defendant's unwarranted denials of any responsibility
in connection with the outstanding reservation against
his title and refusal to recognize it then or thereafter,
quickly followed by strict forfeiture and summary pro-
ceedings to wipe plaintiffs off the farm, and off his
slate, so soon after he had secured clear title from
them of $9,000 worth of property to apply on the pur-
chase price was, under all the attending circumstances
shown, such inequitable conduct as courts of equity,
which do not favor forfeitures, will take cognizance
of.

The nearest the parties can be restored to any *statu*

*quo* in relation to this deal is along the lines of defendant's tender in connection with his motion for rehearing, leaving plaintiffs in possession of the farm and property on it with perfect title to them assured when they perform on their part.    Being in default in their payments it is but equitable that they make them good with reasonable promptness.    The penalty to defendant for his inequitable action will be loss of interest on all payments while in default to the close of this litigation, perfecting title to the property he sold by securing a deed from Jacobs as proposed and payment of all costs of this suit.

Granting that plaintiffs were entitled to rescind when they first learned the condition of defendant's title, their subsequent part performance with that knowledge and delay until conditions at the time of the contract could not be fully restored suggests an element of equitable estoppel which throws doubt on that right.    Neither of the parties to this suit is entitled in equity to the full relief asked.    Plaintiffs' most meritorious ground of complaint is the cloud on defendant's title which he at first denied any responsibility for and gave no assurance that he ever could or would clear up, until his motion for a rehearing. We are impressed that the offer then made opened the door for an equitable adjustment of this litigation. Chancery cases are heard in this court *de novo* on the record as made.    That offer is laid before this court by defendant's counsel in the record of his appeal, apparently made in good faith and here for consideration by this court.

If within 20 days after this opinion is filed plaintiffs deposit with the clerk of this court subject to its order the sum of $1,000 to be applied on the contract, in case defendant within 10 days after notice thereof delivers to said clerk for plaintiffs a quitclaim deed to him from Jacobs of the mineral and oil reservations

against said property, the court will order delivery of the deed to plaintiffs, payment of the deposit to defendant and render a final decree relieving them from all interest on payments in default during pendency of this litigation and dismiss their bill with all costs of this suit taxed against defendant.   If plaintiffs default in making such deposit their bill will be dismissed with costs to defendant.   If defendant fails to furnish the deed as he offered, the decree of the trial court will be affirmed in effect by decree of this court, in settlement of which counsel may be heard as to the details.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.